**In re the Marriage of Sylvia Therese AL–ZOUHAYLI, Petitioner, Appellant,**

v.

**M. Kheir AL–ZOUHAYLI, Respondent.**

**No. C9–91–1806.**

Court of Appeals of Minnesota.

June 2, 1992.

M. Sue Wilson, Christine N. Howard, Wilson & Binder, Minneapolis, for appellant.

Brian J. Peterson, Minneapolis, for respondent.

Considered and decided by KALITOWSKI, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

In an appeal from the judgment and decree of dissolution, appellant Sylvia Therese Al–Zouhayli challenges the trial court's order allowing respondent M. Kheir Al–Zouhayli to exercise unsupervised visitation with the parties' only child. We affirm.

## FACTS

Respondent was born and brought up in Syria, but left that country at age 18 to attend college and later medical school in Romania. The parties married in Decem-

ber 1983, and settled in Minnesota in 1984. Respondent became a naturalized United States citizen but retains his Syrian citizenship. The parties' son, born March 22, 1989, has dual United States and Syrian citizenship.

No member of respondent's immediate family lives in the United States. Respondent's parents are deceased, but other close relatives live in Syria and Saudi Arabia. Respondent visits Syria periodically.

The parties separated in February 1990. At that time, respondent was a resident in pediatrics at the University of Minnesota Medical School and appellant was unemployed. In an April 6, 1990 temporary order, appellant was awarded physical custody of the child and respondent was awarded visitation to take place in appellant's presence at a mutually agreeable location. At trial, appellant requested that supervised visitation be continued because she feared respondent would abduct the child to Syria or Saudi Arabia.

Consistent with appellant's testimony, the trial court found that prior to the separation respondent had expressed an intent to return to Syria or emigrate to Saudi Arabia. The trial court credited appellant's testimony that respondent had once made statements to the effect that his child would never be raised by another man and that respondent would have his child regardless of what the court ordered.

The trial court also adopted appellant's version of several incidents where respondent's conduct was dishonest or showed a lack of integrity. The most serious of these concerned respondent's improper copying of study materials from a review course, and his filing of a false claim for items allegedly taken from his towed vehicle. The trial court concluded that respondent was not truthful in his testimony regarding these incidents. Moreover, the trial court found respondent had not met his obligations under the temporary support order, and rejected his testimony that he was financially unable to comply.

Appellant presented expert testimony from three witnesses regarding the possibility of abduction in this case. Betty Mah-moody is a writer and lecturer and the author of a best-selling book recounting her escape with her daughter from Iran. Carol Watson is the Executive Director of Missing Children Minnesota, a non-profit organization that assists parents who are searching for missing children. Dr. Robert Thorud is a consulting psychologist who was involved with the program dealing with the recovery of abducted children during his employment by the Illinois State Police from 1984 through 1988.

These three witnesses generally agreed that there are factors present in this case that enhance the likelihood of an abduction occurring, including respondent's family ties in Syria and Saudi Arabia, his visits there, his failure to make court-ordered payments, and the evidence of his untruthfulness. None of these witnesses had met with or interviewed respondent. They all testified that supervised visitation was the most effective way to prevent abduction. Dr. Thorud stated, however, that an abduction could occur even if visitation was supervised.

Dr. Thorud testified that the sudden loss of a parent is very traumatic for an abducted child and that a two year old would suffer psychological harm if removed from his bonded custodial parent. Dr. Thorud agreed that supervised visitation does affect the ability of the supervised parent to develop a relationship with the child, but concluded that on balance the complete loss of a parent by abduction is more traumatic to the child than the potential harm from supervised visitation.

Respondent testified that he loves the parties' child and would not take him away from appellant. Respondent testified that supervised visitation had prevented him from developing a close relationship with the child. Respondent agreed to the award of primary physical custody to appellant and stated he did not object to appellant's choice of religion for the child. Respondent testified he has no intention of returning to Syria or emigrating to Saudi Arabia. He stated that he wants to practice medicine in Minnesota and that he con-

siders his culture to be American–European.

Respondent presented the testimony of Dr. Pi–Nian Chang, a licensed consulting psychologist and Director of the Division of Pediatric Psychology in the Department of Pediatrics at the University of Minnesota. Based on his evaluation of respondent, which included a lengthy interview and the administration of various tests, including the MMPI, Dr. Chang opined that the possibility respondent would abduct the child was very remote. Dr. Chang also testified that supervised visitation definitely would have a detrimental impact on respondent's ability to bond with the child. In addition, respondent submitted his entire personnel file from the University of Minnesota, which contains favorable assessments of his performance as a pediatrician.

The trial court made extensive findings pertaining to the visitation issue. Although concluding that respondent's testimony was not entirely truthful, the court found he had shown integrity and good character at work and that Dr. Chang, the only expert who dealt directly with respondent, believed the possibility of abduction is remote. The court found appellant had not proven by a preponderance of the evidence that the danger of abduction was so high that supervised visitation should continue.

Accordingly, the trial court awarded unsupervised visitation to respondent, limited to four metropolitan counties and conditioned on appellant's proof of continued employment in the Twin Cities area. The court directed appellant to retain possession of the child's passport, and prohibited respondent from applying for a replacement passport without the written consent of appellant or the court. Respondent was also directed to provide appellant with the release of information regarding his employment status.

## ISSUE

Did the trial court abuse its discretion in allowing respondent unsupervised visitation?

## ANALYSIS

The trial court's discretion in deciding visitation questions is "extensive" and will not be reversed absent an abuse of discretion. *Manthei v. Manthei,* 268 N.W.2d 45, 45–46 (Minn.1978). Visitation between a child and the noncustodial parent is regarded as "a parental right essential to the continuance and maintenance of a child-to-parent relationship." *Griffin v. Van Griffin,* 267 N.W.2d 733, 735 (Minn.1978).

■ Parental visitation rights are not absolute, however, and can be exercised only when the child's best interests are served. *Manthei,* 268 N.W.2d at 45. If the court finds that visitation is "likely to endanger" the child's physical or emotional health or impair the child's emotional development, the court shall restrict visitation as to time, place, duration, or supervision and may deny visitation entirely, as the circumstances warrant. Minn.Stat. § 518.175, subd. 1 (1990).

In this case, the only allegation of endangerment pertains to the risk of abduction. Appellant conceded that respondent loves the child and interacts with him very well. On the other hand, it is undisputed that if respondent did abduct the child, the sudden disruption of the child's relationship with appellant would cause him severe emotional harm.

■ Appellant argues that the statute only requires her to show that abduction is likely, and the trial court erred in finding that a strong probability of abduction must be shown by a preponderance of the evidence. In view of the importance of meaningful visitation, and because the allegation of endangerment was based solely on speculation as to what respondent *might* do, and not on any past mistreatment of the child, we find that the trial court properly characterized appellant's burden. *See Griffin,* 267 N.W.2d at 735 (denial of visitation shall be based on "persuasive evidence" that visitation will not serve the best interests of the child).

■ Appellant contends that even if the burden of proof applied by the trial court was correct, the court's decision to allow

unsupervised visitation was an abuse of discretion because the court's own findings establish that there is a strong probability respondent will abduct the child. In view of the trial court's broad discretion, and considering the findings as a whole, we cannot agree.

The decision whether to allow unsupervised visitation is complicated by the undisputed evidence that if respondent abducts the child to Syria or Saudi Arabia, it will be virtually impossible for appellant to recover him. Neither country has ratified the Hague Convention on the Civil Aspects of International Child Abduction.[1] Moreover, the trial court found that the courts of Syria and Saudi Arabia would not honor a Minnesota court's custody order and would be compelled by local law and custom to award custody of the child to respondent.

The decision whether to order supervised visitation must depend, however, on the particular facts of the case, and the unwillingness of the noncustodial parent's native country to enforce the trial court's custody order is not controlling. In this case, although some of respondent's past statements and conduct are troubling, there is substantial information in the record favorable to respondent. Dr. Chang's evaluation, respondent's reputation as a conscientious and caring pediatrician, respondent's love for the child, and his cooperation with supervised visitation under the temporary order all support the trial court's conclusion. Moreover, the trial court and not this court, had the opportunity to observe respondent and assess the credibility of his testimony that he would do nothing to hurt the child and would not separate him from appellant. *See* Minn. R.Civ.P. 52.01.

The trial court was required to balance the harmful effect of supervised visitation on the parent-child relationship against the risk of abduction. We do not find a basis for reversal of the trial court's carefully considered decision allowing respondent un-

supervised visitation only in the Twin Cities metropolitan area and conditioned on his continued employment here. *See Tischendorf v. Tischendorf,* 321 N.W.2d 405, 412 (Minn.1982) (findings of a trial judge in a matter of such importance as the bond between father and son should not be lightly set aside), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983).

## DECISION

The trial court did not abuse its discretion in finding that a strong probability of abduction had not been shown and in allowing unsupervised visitation. Respondent's request for an award of attorney fees on appeal is denied.

Affirmed.

LANSING, Judge (dissenting).

I respectfully dissent. Minn.Stat. § 518.-175, subd. 1 (1990) requires courts to grant "such rights of visitation * * * as will enable the child and the noncustodial parent to maintain a child to parent relationship that will be in the best interests of the child." The court is further required to restrict visitation if it "is likely to endanger the child's physical or emotional health or impair the child's emotional development." Minn.Stat. § 518.175, subd. 1. Requiring, as the trial court did, that appellant demonstrate the likelihood of abduction by a preponderance of the evidence is, I believe, too high a standard and not required by the statute.

In a careful and detailed order, the trial court found that respondent (a) testified untruthfully, (b) forged letters of reference and applied fake seals, (c) misstated work experience, (d) submitted fraudulent insurance claims, (e) submitted false statements to avoid paying sales tax, and (f) failed to comply with the court's order for child support even though he was financially able to provide the support.

The court also found that (a) respondent has dual American and Syrian citizenship,

---

1. Hague Conference on Private International Law, Final Act to the 14th Session, October 25, 1980. 51 Fed.Reg. 10498 (1980). The Convention's goal is to curb international abductions of

children by providing judicial remedies to those seeking the return of a child who has been wrongfully removed or retained.

(b) respondent was born in Syria and has extensive family ties in Syria and Saudi Arabia, (c) neither Syria nor Saudi Arabia are signatories to the Hague Convention and neither could be expected to assist in returning a child to this country, (d) courts of Syria and Saudi Arabia would be compelled to award custody of the child to respondent and no American court order would be enforced in Syria, (e) respondent has stated on more than one occasion that he intends to leave this country, (f) the child's dual citizenship would permit issuance of a Syrian passport, (g) respondent frequently visits Syria and was last there in 1990, and (h) respondent will complete his medical training program in 1992.

The majority's rejection of the evidence of endangerment as "based solely on speculation as to what respondent *might* do, and not on any past mistreatment of the child" (emphasis in original) demonstrates the problems inherent in the court's application of the "likelihood" standard. There is substantial evidence in the record on which a trial court could reasonably impose supervised restricted visitation without subjecting it to a further criteria that probability of abduction must be shown by a preponderance of the evidence. Although supervised visitation is undeniably a burden on the noncustodial parent, it is a burden imposed by vital interests of the child. The 1992 legislature, recognizing the need for safe, supervised locations for noncustodial parents to visit with their children, provided funds to establish children's safety centers. 1992 Minn.Laws ch. 571, Art. 10, § 17.