**In re the Matter of Mark La-CHAPELLE, petitioner, Respondent,**

v.

**Denise MITTEN, Appellant,**

**In re the Custody of L.M.K.O., Valerie Ohanian, petitioner, Respondent,**

and

**Denise Mitten, Appellant,**

and

**Mark LaChapelle, Respondent.**
**No. C5–99–1304.**

Court of Appeals of Minnesota.

March 14, 2000.

Review Denied May 16, 2000.

---

Mary Madden, Madden Law Offices, Minneapolis, for respondent LaChapelle.

Christopher D. Johnson, Best & Flanagan, Minneapolis, for respondent Ohanian.

Gary A. Weissman, Weissman Law Office, and Susan Rhode, Moss & Barnett, Minneapolis, for appellant Mitten.

Rosanne Nathanson, Leonard, Street & Deinard, Minneapolis, guardian ad litem for child.

Considered and decided by
HALBROOKS, Presiding Judge,
LANSING, Judge, and SHUMAKER,
Judge.

## OPINION

SHUMAKER, Judge.

Appellant Denise Mitten gave birth to a child as a result of artificial insemination from sperm donated by respondent Mark LaChapelle. Mitten and her partner, respondent Valerie Ohanian, agreed with LaChapelle and his partner as to custody and visitation of the child. When Mitten and Ohanian severed LaChapelle's visitation with the child, LaChapelle commenced paternity proceedings. When Mitten and Ohanian later terminated their relationship, the parties commenced various proceedings to determine custody and visitation rights.

After trial, the court determined physical and legal custody, visitation rights, and financial issues, and denied Mitten's motion to change the child's surname.

On appeal, Mitten contends that the court abused its discretion by granting her sole physical custody on the condition that she and the child reside in Minnesota, granting joint legal custody to her and Ohanian, apportioning trial fees equally among the parties, requiring her to pay certain travel expenses for visitation, refusing to award additional past child support, and denying her motion to change the child's surname. We hold that the trial court did not abuse its discretion as to its awards and determinations. Therefore, we affirm.

## FACTS

Mitten and Ohanian were lesbian partners. LaChapelle was in a gay partnership with another man. The four met in 1990 to discuss the possibility of conceiving and raising a child. They agreed in writing that LaChapelle would donate sperm for the artificial insemination of Mitten, that LaChapelle would have no parental rights, and that Mitten would not hold him responsible for the child. Mitten became pregnant in April 1992.

In May 1992, the four signed another agreement stating that Mitten and Ohanian would have physical and legal custody of the child and LaChapelle and his partner would be entitled to a "significant relationship" with the child. The child, L.M.K.O., was born January 4, 1993.

After L.M.K.O.'s birth, Mitten and Ohanian petitioned for adoption. On the petition they identified the father as "artificial insemination" and did not inform the court of the donor's identity or of the parties' various agreements. The court granted the adoption in September 1993.

LaChapelle visited L.M.K.O. regularly until August 1994, when Mitten and Ohanian terminated visitation. LaChapelle then moved the court to vacate the adoption, alleging fraud on the court for failure to disclose the parties' agreements. The court vacated the adoption. In August 1995, LaChapelle filed an affidavit with the court stating his intention to retain parental rights. He then filed a petition to adjudicate paternity. The court granted Mitten temporary custody of L.M.K.O.

Mitten and Ohanian ended their relationship in the spring of 1996. Later, Mitten requested the court's permission to move with L.M.K.O. to Michigan for employment reasons. At the same time, Ohanian petitioned for custody. The court granted Mitten's request pending further proceedings, ordered blood tests in the paternity action, and granted Ohanian's motion to consolidate her custody petition with LaChapelle's paternity petition.

Mitten moved to Michigan with L.M.K.O. in October 1996. The court granted visitation rights to Ohanian and LaChapelle while L.M.K.O. was in Michigan. One month they would fly to Michigan and visit with L.M.K.O. for three or four days. The next month L.M.K.O. would fly to Minnesota to visit them.

The court adjudicated LaChapelle to be L.M.K.O.'s biological father in June 1997, but allowed Mitten to retain interim custody. The court then ordered a custody and visitation evaluation, joined L.M.K.O. in the action, and appointed a guardian ad litem for her. In November 1997, the court ordered LaChapelle to pay past and future child support.

After a trial in February 1999, the court awarded sole physical custody of L.M.K.O. to Mitten on the condition that Mitten provide a permanent residence for L.M.K.O. in Minnesota. The court found that the parties had agreed before trial that Mitten and Ohanian would have joint legal custody of L.M.K.O., and the court ruled that such custody was in L.M.K.O.'s best interests. The court made awards of visitation, child support, and expenses for the daycare, medical, and dental needs of L.M.K.O.; denied Mitten's request to change L.M.K.O.'s surname; and apportioned trial fees evenly among the parties.

Mitten appeals the grant of joint legal custody, conditional sole physical custody, the final awards, and the denial of the name change. She seeks need-based attorney fees and moves to strike parts of Ohanian's brief and appendix.

### ISSUES

1. Did the trial court err in finding that Ohanian had standing to seek custody of L.M.K.O.?

2. Did the trial court abuse its discretion in granting joint legal custody to Mitten and Ohanian?

3. Did the trial court abuse its discretion in conditioning the grant of sole physical custody to Mitten on her moving back to Minnesota from Michigan?

4. Did the trial court abuse its discretion in evenly apportioning trial costs among the three parties?

5. Did the trial court abuse its discretion in requiring Mitten to pay visitation expenses for L.M.K.O. to visit LaChapelle and Ohanian in Minnesota?

6. Did the trial court abuse its discretion in refusing to grant Mitten additional past child support?

7. Did the trial court abuse its discretion in refusing to change L.M.K.O.'s surname upon Mitten's motion?

8. Is Mitten entitled to attorney fees on appeal?

9. Should this court grant Mitten's motion to strike portions of Ohanian's brief and appendix?

### ANALYSIS

■■■ The court's "paramount commitment" in all matters involving court-established relationships of a child is the best interests of the child. *Olson v. Olson*, 534 N.W.2d 547, 549 (Minn.1995). "The trial court has broad discretion to determine matters of custody." *Durkin v. Hinich*, 442 N.W.2d 148, 151 (Minn.1989). Review of custody determinations "is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). "The trial court's findings must be sustained unless clearly erroneous." *Id.*

1. Standing of a non-parent

■■ Mitten argues that Ohanian does not have standing to seek custody of L.M.K.O. because: (1) Minn.Stat. § 518.156 (1998), which permits custody petitions by a third person, does not apply here because chapter 518 is the Marriage Dissolution Act, and here there was no marriage; and (2) therefore Ohanian would have had to bring her petition for custody under chapter 257, the Parentage Act, which speaks only to biological mothers and father. Because Ohanian is not a biological mother, Mitten argues, she has no standing under Minnesota law to seek custody of L.M.K.O.

Standing to seek custody under chapter 518 is conferred by Minn. Stat § 518.156.

*See In re Custody of E.A.Q.D.*, 405 N.W.2d 262, 264 (Minn.App.1987) (addressing standing to seek custody under Minn.Stat. § 518.156). Under the statute, a custody proceeding may be commenced "by a person other than a parent" under certain circumstances. Therefore, the fact that Ohanian is not L.M.K.O.'s biological parent does not preclude her from seeking custody of L.M.K.O. The circumstances under which a non-parent may seek custody are defined as situations "where a decree of dissolution or legal separation has been entered or where none is sought[.]" Minn. Stat. § 518.156, subd. 1(b). Here, because the parties were not seeking a dissolution decree, Ohanian could start a custody proceeding "by filing a petition or motion seeking custody[.]" *Id.* Because this is what Ohanian did, the district court did not err in ruling that she had standing to seek custody.

■■■ The statute is clear on this point; therefore, we need not, and cannot, look beyond its plain language. *See* Minn.Stat. § 645.16 (1998) (stating "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under pretext of pursuing the spirit"); *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 274 (Minn. 1995) (stating "[w]here the intention of the legislature is clearly manifested by plain unambiguous language * * * no construction [of the statute] is necessary or permitted"). Because this court is limited in its function to correcting errors it cannot create public policy. Thus, in the face of clear statutory language, Mitten's policy arguments must fail. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) (reversing court of appeals, noting "[t]he function of the court of appeals is limited to identifying errors and then correcting them").[1] The wisdom of allowing non-parents to seek custody of a child is not relevant to whether such persons have standing to do so. *See, e.g., Blanche v.1995 Pontiac Grand Prix*, 599 N.W.2d 161, 169 (Minn.1999) (Stringer, dissenting) (stating "[w]e have long recognized that '[c]ourts have nothing to do with the wisdom or expediency of statutes. The remedy for unwise or inexpedient legislation is political and not judicial'") (quoting *Hickok v. Margolis*, 221 Minn. 480, 485, 22 N.W.2d 850, 852 (1946)).[2]

1. We note that the foreign cases Mitten cites are factually distinguishable, or based on qualitatively different custody statutes, or both.

2. We note the differences between Minn.Stat. § 518.156, subd. 1(b) and the Uniform Marriage and Divorce Act (UMDA), adopted by Minnesota, from which it was taken. UMDA § 401 provides:

> A child custody proceeding is commenced in the [___] court:
> (1) * * *
> (2) by a person other than a parent, by filing a petition for custody of the child in the [county, judicial district] in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents*.

UMDA (U.L.A.) § 401 (1998) (emphasis added). The comment to section 401 provides that:

> [s]ubsection (d) makes an important distinction between custody disputes commenced by parents and those commenced by some other person interested in a particular child. * * * [S]ubsection (d)(2) makes it clear that if one of the parents has physical custody of the child, a non-parent may not bring an action to contest that parent's right to continuing custody under the "best interest of the child" standard of Section 402. If a non-parent * * * wants to acquire custody, he must commence proceedings under the far more stringent standards for intervention provided in the typical Juvenile Court Act. In short, this subsection has been devised to protect "parental rights" of custodial parents and to insure that intrusion upon those rights will occur only when the care the parent is providing the child falls short of the minimum standard imposed by the community at large–the standard incorporated in the neglect or delinquency definitions of the state's Juvenile Court Act.

UMDA (U.L.A.) § 401 comm. While not commenting on the reasons for nor the wisdom of such differences, we note that Minn.Stat. § 518.156, subd. 1(b) allows for a much broader range of circumstances under which a non-parent has standing to seek custody of a child than does the UMDA.

## 2. Joint legal custody

█ The trial court found that Mitten, Ohanian, and LaChapelle came to an agreement regarding joint legal custody prior to trial. The court also found joint legal custody to be in L.M.K.O.'s best interests. On appeal, Mitten argues that she was coerced into agreeing to joint legal custody.

█ On appeal, a trial court's findings must be sustained unless clearly erroneous. *Pikula*, 374 N.W.2d at 710. A finding is "clearly erroneous" if the reviewing court is " 'left with the definite and firm conviction that a mistake has been made.' " *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (quoting *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn. 1987)). When determining whether findings are clearly erroneous, an appellate court views the record in the light most favorable to the trial court's findings. *Lossing v. Lossing*, 403 N.W.2d 688, 690 (Minn.App.1987). Also, appellate courts defer to trial-court credibility determinations. *Sefkow*, 427 N.W.2d at 210.

The record shows that prior to trial, Mitten, Ohanian, and LaChapelle each sought legal custody of L.M.K.O. During motions in limine before trial, Mitten's attorney stated on behalf of Mitten that "[s]he would accept joint legal custody with either [LaChapelle or Ohanian]." At a chambers conference with the trial court judge on the first day of trial, LaChapelle withdrew his demand for legal custody. At the beginning of trial, the court found that, based on the comments of Mitten's attorney at the motions hearing, on conference calls prior to trial between the attorneys and the court, and on LaChapelle's withdrawn demand for legal custody, Ohanian and Mitten would agree to joint legal custody. Mitten admitted on cross-examination, "I agreed that I would share joint

legal custody with her." We hold the record supports the trial court's finding.

█ The welfare of the child takes precedence even if a case involves an agreement. *Moylan v. Moylan*, 384 N.W.2d 859, 865 (Minn.1986) (citing *Petersen v. Petersen*, 296 Minn. 147, 148, 206 N.W.2d 658, 659 (1973)). Parties cannot enter into an agreement that might be against the best interests of the child. *Sydnes v. Sydnes*, 388 N.W.2d 3, 7 (Minn. App.1986). Mitten argues that the trial court erred in granting joint legal custody to Ohanian because she and Ohanian do not have the ability to cooperate. Where a grant of joint legal custody is contemplated, the court must consider additional best-interests factors which relate to the parties' ability to cooperate in the raising of the child. Minn.Stat. § 518.17, subd. 2 (1998) (factors to be considered when joint legal custody is requested include the ability of potential joint custodians to cooperate). There is evidence in the record of the parties' inability to cooperate. However, there is also evidence that Mitten and Ohanian are willing to try to cooperate for L.M.K.O.'s sake, and that there are methods in place for resolving disputes that might arise. The trial court found that joint legal custody would be in L.M.K.O.'s best interests. The record supports the trial court's finding. *See Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951) (function of an appellate court "does not require us to discuss and review in detail the evidence for the purpose of demonstrating that it supports the trial court's findings[; our] duty is performed when we consider the evidence, as we have done here, and determine that it reasonably supports the findings").

Mitten also argues that a trial court cannot grant custody to a third party unless the biological parents are unfit, and in this case neither biological parent is unfit.[3]

---

3. Mitten presents this argument in terms of whether or not Ohanian, as a non-parent, has *standing* to seek custody of a child over the objection of a fit, biological parent. However-

er, *Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971), addresses the standard for *awarding* custody to a non-parent. As previously stated, under Minn.Stat.

The record is unclear as to whether Mitten properly preserved this issue for appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (this court will not consider matters not argued and considered in the court below). In her post-trial memorandum to the trial court, Mitten stated that one "non-issue" was legal custody, as she and Ohanian had agreed they would be joint legal custodians of L.M.K.O. Mitten also stated in the summary to her memorandum that the trial court should "[a]ward joint legal custody of L.M.K.O. to Mitten and Ohanian." We assume, but do not concede, that Mitten has properly preserved the issue of granting custody to a non-parent for appeal.

▬▬▬ Mitten argues that a trial court does not have the authority to grant joint legal custody to a non-parent when the biological parents are fit. The standard for granting custody to a non-parent over the objection of a biological parent was set out by the supreme court in *Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971). When deciding custody disputes between a parent and third party, a biological parent is entitled to custody of his or her own child "unless it clearly appears that she is unfit or has abandoned her right to custody, or unless there are some extraordinary circumstances which would require that she be deprived of custody." *Id.* at 264, 187 N.W.2d at 629. However, the best interests of the child is the primary test to be applied in awarding custody. *Id.* The first requirement in applying the *Wallin* standard is that there be a "dispute" as to custody between a parent and a non-parent. *See In re Custody of N.M.O.*, 399 N.W.2d 700, 702 (Minn.App. 1987) (when deciding custody "disputes" between a parent and a third person, *Wallin* standard applies). The trial court found that Mitten did not dispute joint legal custody with Ohanian. In her post-trial memorandum, Mitten stated that joint legal custody with Ohanian was a "non-issue." The trial court found that Mitten and Ohanian agreed to share legal custody of L.M.K.O. We hold the evidence supports the court's finding. Therefore, at trial, there was not, in fact, a "dispute" between Mitten and Ohanian as to legal custody of L.M.K.O.

Even were we to find that *Wallin* does, in fact, apply in this case, it is clear to us that *Wallin* has been satisfied. By agreeing to share legal custody with Ohanian, Mitten functionally "abandoned her right to [sole legal] custody" under the first prong of *Wallin*. 290 Minn. at 264, 187 N.W.2d at 629. In addition, the trial court found it to be in the best interest of L.M.K.O. for Mitten and Ohanian to share legal custody. The record supports the court's findings. *See N.M.O.*, 399 N.W.2d at 703 (best interests of the child is always the overriding consideration in custody decisions).

▬▬▬ Finally, Mitten argues that in granting joint legal custody to her and Ohanian and in giving LaChapelle all the rights of a joint legal custodian as well, the trial court created an impermissible "triumvirate" parenting scheme. *See* Minn. Stat. § 518.17, subd. 3(b) (1998) (rights to be granted to each party in a custody decree regardless of custody). The trial court found that the parties had agreed that LaChapelle would drop his demand for legal custody of L.M.K.O.; Mitten and Ohanian would share joint legal custody; and LaChapelle would have various rights to the child. Any rights LaChapelle has under the agreement with Mitten and Ohanian are not those of a joint legal custodian. Therefore, we reject Mitten's argument that the court created, in effect, three legal custodians.

## 3. Conditional physical custody

Mitten argues that the trial court abused its discretion in conditioning physical custody on her moving her residence

---

§ 518.156, subd. 1(b), Ohanian has standing to seek custody. We therefore consider Mitten's argument here under the award of joint legal custody.

from Michigan to Minnesota. She argues that (1) the trial court had already granted her permission to move permanently to Michigan with L.M.K.O.; (2) the court had no authority to make a conditional grant of physical custody; and (3) conditional physical custody violates the Minnesota and United States Constitutions.

### a. Order allowing Mitten to move to Michigan with L.M.K.O.

Minn.Stat. § 518.131 (1998) allows the court, in a custody proceeding, to grant temporary custody to one parent pending the final disposition of the proceeding. Minn.Stat. § 518.131, subd. 1. Unless otherwise altered, a temporary order remains in effect until entry of a final decree and a temporary order "[s]hall not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding." Minn.Stat. § 518.131, subd. 5, 9(a).

By order dated August 30, 1996, the trial court granted Mitten's "motion for permission to move her permanent residence to Hersey, Michigan." Mitten argues that the order was not a temporary order. In its memorandum following the grant of Mitten's motion, however, the trial court specifically stated that "Mitten agrees that she is still subject to this Court's jurisdiction." The trial court based its decision to allow Mitten to move to Michigan on Minn.Stat. § 518.131. Similarly, in the court's June 12, 1997 order adjudicating paternity, the court stated that prior orders awarding Mitten custody had been interim orders. We hold that the court intended the order allowing Mitten to move to be a temporary order. Even if the August 1996 order was ambiguous about whether it was temporary or permanent, that ambiguity was resolved against Mitten in the June 1997 order by the same judge who issued the earlier order. We defer to a district court's interpretation of its own order. *See Mikoda v. Mikoda*, 413 N.W.2d 238, 242 (Minn.App.

1987) (trial court's construction of its own decree given "great weight" on appeal).

### b. Authority for granting conditional custody

Mitten argues that the trial court did not have authority to grant conditional physical custody. In determining custody, the trial court must issue a custody order determining legal custody, physical custody and residence, and support based on the best interests of the child. Minn.Stat. § 518.17, subd. 3 (1998).

In an initial custody proceeding, a trial court treats a proposed change of residence by a party as one factor to balance in determining custody of a child. *Stangel v. Stangel*, 355 N.W.2d 489, 490 (Minn.App.1984), *review denied* (Minn. Feb. 6, 1985). A proposed change of residence bears directly on several of the best-interests factors in section 518.17. The factors stressing stability and continuity of care are of particular importance in light of a parent's proposed move to another state. Also important are the intimacy of the relationships between each parent and the child; the interaction of the child with parents and other people who affect the child's best interests; the child's adjustment to home, school, and community; and the permanence, as a family unit, of the existing or proposed custodial home. Minn.Stat. § 518.17, subd. 1(a)(4), (5), (6), (7), and (8) (1998).

Here, the trial court's findings indicate that Mitten's change of residence was but one factor in the court's best-interests analysis. The trial court, applying the correct standard, found it would be in L.M.K.O.'s best interests to live in the Twin Cities metropolitan area. The court also found it would be in her best interests for Mitten to remain her sole physical custodian if Mitten lived in Minnesota. Viewing the record in the light most favorable to the trial court's findings, those findings are supported by the evidence. The lack of statutory authority explicitly allowing conditional custody awards does

not preclude such an award when it is in the child's best interest. *See DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 758 (Minn. 1981) (in family cases, the district court has inherent power to grant relief as facts and equities require).

### c. Constitutionality of conditional custody

■■■■ Mitten argues that conditioning sole physical custody on her returning to Minnesota violates her rights of travel, privacy, and equal protection under the Minnesota and United States Constitutions. We disagree.

The right to travel is inherent in the concept of our country as a federal union; hence the right to travel is a fundamental constitutional right under the federal constitution.

*Mitchell v. Steffen*, 504 N.W.2d 198, 200 (Minn.1993). The right to travel includes the right to "live and settle down anywhere one chooses in this country without being disadvantaged because of that choice." *Id.* at 201. The nature of the disadvantage or hardship involved is important to the level of review a restriction on the right to travel receives. *Id.* at 202. In this case, the hardship imposed on Mitten is the loss of sole physical custody of her daughter if she does not return to Minnesota. This implicates the fundamental right to raise one's child, which triggers the application of strict scrutiny. *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (fundamental interest of a parent in the companionship, care, custody, and management of children).

■■■■ The deprivation of fundamental rights is subject to strict scrutiny and may only be upheld if justified by a compelling state interest. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The compelling state interest in this case is the protection of the best interests of the child. *See In re Welfare of M.P.*, 542 N.W.2d 71, 74 (Minn.App.1996) ("[T]he paramount nature of a child's best interests is a principle that has been part of Minnesota child welfare law for at least 100 years.") (citing *In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn.1986) (noting that best interests doctrine "has long been recognized as the common thread in cases determining * * * the circumstances in which children are required to live" and adopting best interests doctrine "as a paramount consideration" in termination of parental rights cases)), and *State ex rel. Flint v. Flint*, 63 Minn. 187, 189, 65 N.W. 272, 272 (1895) (stating that, in a custody dispute, in spite of other considerations, including application of statutory law, "[t]he paramount question was * * * what would be most for the benefit of the infant"). While no cases in Minnesota have decided whether the best interests of the child is a state interest compelling enough to allow burdening a parent's fundamental right to travel, other states have so found.

Particularly relevant to this case is the Supreme Court of Montana's recent decision in *In re Custody of D.M.G. and T.J.G.*, 287 Mont. 120, 951 P.2d 1377 (1998). A couple who had never married lived together in Montana and had two children together. *Id.* at 1379. Their relationship ended two years after their children were born, and the children resided with the mother. *Id.* The mother moved with the children to Oregon, where her family resided. *Id.* The trial court concluded it was in the children's best interests that both parents reside in Montana and granted the mother custody if she returned to Montana. *Id.* at 1380. The Montana Supreme Court found that

[t]he case at bar * * * involves a situation where the court is effectively requiring that the children's primary residential custodian move to Montana from another state where the custodian had already established her home and the children's home prior to the initial custody determination and prior to the relocation issue being raised. * * * [W]e conclude that the instant fact situation

may impact the constitutional right of interstate travel to an even greater extent than would the facts in our previously decided cases [where parties' and children's home is in Montana at the time custody is first determined].

*Id.* at 1382–83. The court also stated that [Mother's] constitutional right of interstate travel is qualified by the special obligations of custody, the state's interest in protecting the best interests of the children and by the competing interests of the non-custodial parent.

*Id.* at 1381. The Montana court ultimately held that furtherance of the best interests of children may constitute a compelling state interest worthy of reasonable interference with a parent's right to travel, but the parent requesting the travel restriction must provide sufficient proof that a restriction is in the best interests of the child. In that case, the father had not done so. *Id.* at 1383. *See also Clark v. Atkins*, 489 N.E.2d 90, 100 (Ind.Ct.App. 1986) (holding grant of custody to mother on condition she return to Indiana does not impose burden on right to travel, because (1) she remains free to go where she chooses, (2) it is only the children who must be returned to Indiana, and (3) the law has few objectives more compelling than protecting the interests of children); *Ziegler v. Ziegler*, 107 Idaho 527, 691 P.2d 773, 780 (Ct.App.1985) (court cites with approval district court decision finding that "[p]roviding and assuring the maximum opportunities for parental love, guidance, support and companionship is a compelling state interest that * * * warrants reasonable interference with the constitutional right of travel"); *Carlson v. Carlson*, 8 Kan.App.2d 564, 661 P.2d 833, 836 (1983) ("Her right to travel or even to establish residence elsewhere is limited only by her desire to retain her status as the custodial parent.").

Here the trial court specifically found that it would be in L.M.K.O.'s best interests to reside in Minnesota where she could maintain a relationship with Mitten as her biological mother and Ohanian as her "emotional parent," and LaChapelle as her biological father. The trial court used the term "emotional parent" in its order to refer to a person L.M.K.O. looks to for comfort, solace, and security. As in *Clark*, the trial court did not restrict Mitten's right to remain in Michigan; the court only required L.M.K.O. to be returned to Minnesota. Any burden on Mitten's right to travel arises from her desire to remain L.M.K.O.'s sole physical custodian.

■■■■ The United States Supreme Court has recognized a general freedom from governmental intrusion in child-rearing decisions. *In re Petition of Santoro*, 578 N.W.2d 369, 374 (Minn.App.1998) (citing *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); and *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)), *reversed on other grounds*, 594 N.W.2d 174 (Minn. 1999). There is a constitutional right to familial privacy, but the right is not absolute. *R.S. v. State*, 459 N.W.2d 680, 689 (Minn.1990). When there is an allegation of interference by the state with a protected right of privacy, the court must balance the interest in the privacy against the state's need to intrude on that privacy. *Id.* Minnesota's interest in protecting L.M.K.O.'s best interests is compelling and justifies intrusion into Mitten's privacy in her familial relationship with L.M.K.O.

■■■■ Finally, Mitten argues that an arrangement that obliges the biological mother to move to a place she does not want to live for the convenience of the child's father and one other important adult in the child's life offends the equal protection clauses of the Minnesota and United States Constitutions. But the trial court did not require Mitten to move her home at all; it simply required L.M.K.O. to be brought back to Minnesota. The court based its decision on L.M.K.O.'s best

interests, not on the convenience of the parties. Specifically, the court stated

> [n]either Mitten's desire to live in rural Michigan nor the convenience and expense incurred by LaChapelle and Ohanian in visiting [L.M.K.O.] there are the primary factors with which this Court bases its decision. Instead, this Court looks at [L.M.K.O.]'s best interest in deciding how custody, visitation, and her residency can provide meaning[sic], positive, parental relationships with each of her three parents.

The equal protection guarantees prevent the government from making distinctions among people when applying the law unless the distinction serves a legitimate governmental interest. *R.B. v. C.S.*, 536 N.W.2d 634, 637 (Minn.App.1995). In Minnesota, custody decisions are based on the best interests of the child. The focus in applying the best-interests standard is on the child, not the parents, and therefore the standard applies equally to all parents. *See Carlson*, 661 P.2d at 836–37 (rejecting mother's argument that a residency restriction in the custody decree is a violation of equal protection because a similar restriction was not placed on father, because the best-interests-of-the-child standard applies to both parents).

4. Trial costs

 The court may order expert witness and guardian ad litem fees and other costs of the trial and pretrial proceedings, including appropriate tests, to be paid by the parties in proportions and at times determined by the court.

Minn.Stat. § 257.69, subd. 2 (Supp.1999). An award of expenses at trial is a matter in the court's discretion and will not be reversed on appeal absent an abuse of that discretion. *J.L.B. v. T.E.B.*, 474 N.W.2d 599, 605 (Minn.App.1991), *review denied* (Minn. Oct. 11, 1991).

 Mitten argues that, because of the disparity in their incomes, the trial court abused its discretion in apportioning the costs of the guardian ad litem, the

custody evaluator, and the psychologist/parenting consultant equally among herself, Ohanian, and LaChapelle. We disagree. Minn.Stat. § 257.69, subd. 2, does not require the trial court to consider a party's ability to pay before ordering the party to pay trial costs. The parties received equal services from the experts and the guardian ad litem and may be required to pay accordingly. The trial court did not abuse its discretion in awarding trial expenses.

5. Visitation expenses

 Mitten argues that the trial court abused its discretion in requiring her to pay costs associated with transporting L.M.K.O. to Minnesota every other month for visitation with Ohanian and LaChapelle.

 The trial court's discretion in deciding visitation questions is extensive and will not be reversed absent an abuse of discretion. *Al–Zouhayli v. Al–Zouhayli*, 486 N.W.2d 10, 12 (Minn.App.1992). The trial court considered visitation issues when Mitten requested permission to move with L.M.K.O. to Michigan. Specifically, in its June 12, 1997 order, it found "[t]he Court is mindful of the fact that Mitten chose to move with L.M.K.O. to Michigan, knowing that visitation with Ohanian and LaChapelle would need to occur." The court required Mitten to pay costs associated with transporting L.M.K.O. to Minnesota every other month to visit Ohanian and LaChapelle and required Ohanian and LaChapelle to pay all costs associated with visiting L.M.K.O. in Michigan. The court found the division of visitation costs fair, and we see no abuse of discretion.

6. Past child support

 Mitten argues that the trial court abused its discretion in not awarding her past child support beginning with the date of L.M.K.O.'s birth, and in refusing to apply an increase in child support retroactively to the date of her motion.

The court shall limit the parent's liability for past support of the child to the proportion of the expenses that the court deems just, which were incurred in the two years immediately preceding the commencement of the action.

Minn.Stat. § 257.66, subd. 4 (1998). We review a trial court's past-support determinations under an abuse of discretion standard. *McNeal v. Swain*, 477 N.W.2d 531, 533–34 (Minn.App.1991). When determining what amount of past support is just, a court must consider the earnings, needs, and resources of the obligor, obligee, and child. *Id.* at 534. "The current and past income of the obligor, along with the past needs of the child, must be considered." *Id.* A court must make particularized findings. *Id.*

The trial court issued an order in June 1997 ordering LaChapelle to pay child support to Mitten. In August 1997, Mitten brought a motion for past child support beginning with the date of L.M.K.O.'s birth. On November 10, 1997, the trial court awarded Mitten past child support, but only starting on June 1, 1997, not the date of L.M.K.O.'s birth, stating:

> Given the procedural history and the unique and unusual facts of this case, the Court deems it just to award retroactive child support, including health insurance and day care, to June 1, 1997.

Mitten argues that the court's refusal to award past support beginning with the date of L.M.K.O.'s birth was an abuse of discretion.

In August 1998, Mitten made a motion to increase LaChapelle's child-support obligation. The trial court deferred the issue until trial. At trial, Mitten requested that the increased child support be made retroactive to the date of her motion. The trial court refused, finding that "[g]iven the unique circumstances of this case, it would not be fair and reasonable to award child support arrearages dating back to August 13, 1998." Mitten argues that the court abused its discretion.

In initially deciding Mitten's motion for past support the court considered the income and obligations of Mitten, LaChapelle, and L.M.K.O., as required. *Id.* The court made the required particularized findings. Because we agree with the trial court that this case is unique, both procedurally and factually, we see no abuse of discretion in the trial court's original award of past support or in its refusal to award arrearages back to the date of Mitten's motion for increased child support.

7. Name change

■■■■■ Mitten argues that the trial court abused its discretion in refusing to change L.M.K.O.'s surname from Ohanian to Mitten. A trial court must grant an application for a change in a minor child's name unless the court finds the change is not in the best interests of the child. Minn.Stat. § 259.11(a) (1998). "When granting or denying a petition for a name change, the court must set forth clear and compelling reasons for its decision." *In re Welfare of C.M.G.*, 516 N.W.2d 555, 561 (Minn.App.1994). In determining the child's best interests, the court may consider, but is not limited to: (1) how long the child has had the current name; (2) any potential harassment or embarrassment the change might cause; (3) the child's preference; (4) the effect of the change on the child's relationship with each parent; and (5) the degree of community respect associated with the present and proposed names. *In re Saxton*, 309 N.W.2d 298, 301 (Minn.1981).

> "[J]udicial discretion in ordering a change of a minor's surname against the objection of one parent should be exercised with great caution and only where the evidence is clear and compelling that the substantial welfare of the child necessitates such change."

*Id.* (quoting *Robinson v. Hansel*, 302 Minn. 34, 36, 223 N.W.2d 138, 140 (1974)). Both Ohanian and LaChapelle objected to changing L.M.K.O.'s surname.

Mitten argues that it is in L.M.K.O.'s best interests to change her surname because it is currently a name that is neither her mother's nor her father's, but that of a genetic stranger. The trial court found that Ohanian is an "emotional parent" to L.M.K.O. Mitten also argues that L.M.K.O.'s name should be changed because it will save her the embarrassment of having to explain why she has a name that is neither her mother's nor her father's and because societal norms dictate that a child have either her mother or father's surname, rather than the surname of a third person.

The trial court found that L.M.K.O. needs and has a sense of community in her full name, and keeping it the same will enhance her identity and will not add any more confusion to her sense of who her family is. The court also found that L.M.K.O.'s current name is important for her relationship with each of her parents because it contains a family name from LaChapelle's family and contains both Mitten's and Ohanian's surnames. L.M.K.O. has been known by her current name for six years. On the facts of this case, six years is long enough for the child to have developed a sense of identity through her name. *See Id.* at 302 (due deference is given to the fact that the child has borne a given surname for an extended period of time). In addition, the custody evaluator recommended that L.M.K.O.'s name remain the same. The court found it in L.M.K.O.'s best interests not to change her name. We find no abuse of discretion.

8. Attorney fees

 Mitten has moved for attorney fees for her costs relating to this appeal. Fees may be awarded at any time in the proceedings. Minn.Stat. § 518.14, subd. 1 (1998). An appellate court may allow suitable attorney fees and necessary disbursements on appeal. *Wilson v. Wilson*, 229 Minn. 126, 130, 38 N.W.2d 154, 157 (1949). The award of fees on appeal lies within the discretion of this court. *Katz v. Katz*, 408 N.W.2d 835, 840 (Minn.1987). Minn.Stat. § 518.14 (1998) provides that, for cases brought under chapter 518, a court shall award attorney fees necessary to enable a party to carry on a proceeding provided: (1) the fees are necessary for the good-faith assertion of the party's rights; (2) the party from whom the fees are sought has the means to pay them; and (3) the party seeking fees does not have the means to pay them. Minn.Stat. § 518.14, subd. 1.

Ohanian's petition for custody, consolidated with LaChapelle's petition to adjudicate paternity, was brought under chapter 518. Therefore, this case qualifies as one brought under chapter 518.

Mitten argues that she had to bring this appeal or risk losing custody of her daughter in order to remain in her home in Michigan. She claims that because she has been forced to leave her home in Michigan and quit her job there and has not found employment in Minnesota, her income has dropped substantially. Mitten provides a brief summary of her sources of income but no evidence of her current expenses. Because Mitten has disclosed interest income she is receiving on "principals," but not the identity or value of the "principals" themselves, and because she has not provided this court with evidence of her expenses, she has failed to demonstrate her inability to pay her own attorney fees, as required by Minn.Stat. § 518.14, subd. 1(3). *See Gales v. Gales*, 553 N.W.2d 416, 423 (Minn.1996) (refusing to award need-based attorney fees on appeal because party seeking fees did not provide court with current information on her income and expenses).

Furthermore, the parties contributed to the protraction of this custody dispute. Mitten and Ohanian initially brought a fraudulent adoption proceeding before the trial court. When the court later vacated the fraudulent adoption and LaChapelle petitioned for an adjudication of paternity, Mitten denied his paternity. Mitten and Ohanian agreed before L.M.K.O. was born

that Ohanian would have equivalent rights regarding the child. Mitten was ordered to return L.M.K.O. to Minnesota by September 1, 1999, yet made little or no effort to find a job pending resolution of this appeal. She incurred additional expenses bringing a motion to stay the trial court's order pending appeal and then in appealing the court's denial of the motion. *See Dabrowski v. Dabrowski*, 477 N.W.2d 761, 766 (Minn.App.1991) (stating "fee awards under Minn.Stat. § 518.14 may be based on the impact a party's behavior has had on the costs of litigation regardless of the relative financial resources of the parties"). Ohanian and LaChapelle have incurred their own expenses in responding to Mitten's motions and appeals.

Mitten's request for attorney fees is denied.

9. Motion to strike

█ Mitten has moved to strike portions of Ohanian's appellate brief. She seeks to strike Appendix B, their "Partnership Agreement," on the ground that it is not a part of the record.

> An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received into evidence below.

*Thiele*, 425 N.W.2d at 582–83. Counsel for all three parties agreed at trial that the custody-evaluator's report would be submitted into evidence in its entirety. The evaluation included a copy of the Partnership Agreement as an attachment. Therefore, Appendix B was part of the record and may be considered by this court on appeal.

█ Mitten also seeks to strike Appendix H, an affidavit of Ohanian responding to Mitten's motion to stay the trial court's order pending resolution by this court, and footnote 20, relating actions taken by Mitten since the trial court's order was issued.

Ohanian does not oppose Mitten's motion concerning Appendix H and footnote 20.[4] In addition, the affidavit and events described in footnote 20 occurred after the entry of the trial court's judgment and decree, from which this appeal is taken, and therefore constitute matters outside the record, which this court will not consider. *Id.* We grant Mitten's motion to strike Appendix H and footnote 20.

## DECISION

We affirm the trial court's judgment and decree granting Mitten sole physical custody on the condition that she move back to Minnesota from Michigan and granting Mitten and Ohanian joint legal custody with LaChapelle to have the right to participate in important decisions affecting L.M.K.O. We also affirm the trial court's decisions on trial costs, past child support, and visitation expenses. We affirm the trial court's decision not to grant Mitten's request to change L.M.K.O.'s surname. We deny Mitten's motion for attorney fees on appeal. We grant in part and deny in part Mitten's motion to strike portions of Ohanian's brief and appendix.

**Affirmed; motion for fees denied; motion to strike granted in part.**

---

4. In Ohanian's memorandum in opposition to Mitten's motion to strike, she asks this court to consider Appendix H and footnote 20 only if we consider the post-decree evidence in Mitten's brief. By order dated November 12, 1999, this court decided not to consider the post-decree evidence in Mitten's brief.