**In re the Marriage of Suanne GABRIELSON, Petitioner, Respondent,**

v.

**Paul GABRIELSON, Appellant.**

**No. C4–84–1340.**

Court of Appeals of Minnesota.

March 5, 1985.

Flynn & Lucht, Worthington, for respondent.

Paul M. Malone, Slayton, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant husband appeals from those provisions in the decree of marriage dissolution which divided the parties' property, set child support, and granted temporary maintenance to respondent wife. We affirm.

## FACTS

Paul and Suanne Gabrielson were married on December 13, 1969. In a bifurcated judgment, the marriage was dissolved on August 18, 1983. At that time, Suanne was granted custody of the parties' three children, who were 3, 8, and 10. The property division, child support, and maintenance issues were reserved in the August 18, 1983 decree, and resolved by judgment entered April 23, 1984.

Husband was employed by the Gabrielson Cattle Corporation, a closely-held corporation formed in 1973 by his parents, Gordon and Mildred Gabrielson. Husband subsequently purchased 49% of the stock from them, on a promissory note, for $108,184. The note is in default, accruing interest on the balance of $83,204.35 at 6% since April 1, 1982. There has been no attempt to collect this debt.

Wife did not work outside the home during the marriage. Since the parties' separation in late 1981, she has returned to college to obtain a degree in teaching. She will graduate in June 1985.

The parties' main asset is their vendee's interest in 120 acres of farmland, purchased on a contract for deed from husband's parents. This land is valued at $110,000, encumbered by a mortgage of $17,908.90 and a balance on the contract of $8,940.84 (both with interest from December 1, 1981). Its value reduced by the encumbrances was approximately $76,707.13 at the time of the judgment. The senior Gabrielsons previously attempted to declare the contract in default, but husband obtained an injunction barring their action. This land was rented to the corporation.

The value of the minority interest in Gabrielson Cattle Corporation is uncertain. The trial court found:

7. That the minority interest in Gabrielson Cattle Corporation has no value unless it could be sold with the concurrence of Respondent's father in which event it would have a value of $44,400.00.

8. That the value of Gabrielson Cattle Corporation assumes the validity of the debt owed to Respondent's father, the major shareholder. Such debt is listed on the corporate books as being $17,120.00 to equalize rent over 5 years; $84,567.00 to equalize wages over 5 years and $60,000.00 for building rent for 5 years. The total debt due the Respondent's father from the corporation in the sum of $161,687.00 represents approximately 25% of the total debt of the corporation.

Wife challenges this debt.

Husband's gross wages ranged from $17,700 in 1978 to a high of $25,762 in 1981. They were $19,500 in 1982. He received rent for the 120 acres totalling $10,479 in 1978, with a low rent of $2,841 in 1981. The rent paid for the land is lower than fair market rent. The amount of wages and rent paid to husband and his father each year varied, reflecting the success of the cattle operation. Both received insurance paid by the corporation, meat, housing, vehicles, fuel, and other in-kind income. Husband spent a portion of 1982 in South Dakota, selling Gabrielson cattle without corporate authorization, appropriating the pro-

ceeds of $17,036.39 for himself. Apparently there has been no attempt to collect this debt, although husband claims he is obligated in that sum.

Husband's wages dropped to $7,570 in 1983, with an additional $7,200 received as rent. He testified his income went down because "I didn't put in as much time and I am not managing the place like I was before." His father concurred. In 1984 his salary was set at $300 per week. In addition, he received housing, a vehicle, fuel, insurance, and other in-kind income.

During the parties' separation, husband consistently failed to meet his court-ordered support obligations. The Gabrielson corporation provided a home, meat, and some money for wife and the children. Wife began contempt proceedings several times to force support payments from husband.

The trial court found husband has the ability to earn a yearly net income of at least $17,500. The trial court also found husband's conduct had a detrimental effect on the size and value of the marital estate since 1982, and his conduct contributed to the substantial reduction in wages in 1983. The court established child support at $135 per month for each of the three children. Husband is obligated to maintain insurance for the minor children. Wife was awarded $400 per month in temporary maintenance to cease June 1985, when it is expected she will graduate.

Husband received the corporate stock and the debt which accompanies it. The court ordered the 120 acres sold. The proceeds were to be applied first to extinguish the mortgage and contract for deed, to pay all real estate taxes, appraisal and attorney's fees for the dissolution, and the 1982 and 1983 income taxes. The remaining proceeds were to be divided equally between the parties. Due to husband's repeated failures to pay support, his share of the proceeds was to be placed in trust to secure child support, maintenance, and all other payments required in the decree. Husband was also given responsibility for a $4,820 debt to his parents (for their sup-

port of wife in his absence), $598 to the Luverne Oil Company, and $117 to the Luverne Medical Center.

Wife received her half-interest in the sale of the 120 acres. She is responsible for her own educational loans, expected to reach $5,900. She was also awarded $3,000 to replace the corporate car she was driving.

## ISSUES

1. Did the trial court abuse its discretion in the property division?

2. Did the trial court abuse its discretion in setting child support?

3. Did the trial court abuse its discretion in awarding temporary maintenance?

## ANALYSIS

1. The trial court has broad discretion in dividing property upon dissolution of a marriage. *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn.1977). The trial court's findings will not be overturned absent a clear abuse of that discretion. *Id.*

Husband claims that the property division, when considered with the child support and maintenance orders, gives him more debts than income. He received the 49% interest in the corporation, together with the corresponding debt. The 49% corporate interest, when combined with the corporate debt, arguably gives husband a negative net worth. The parties' other main asset, the 120 acres, was divided equally.

Husband's primary objection on appeal appears to be the placing of his share of the acreage sale proceeds in trust. Such placement is authorized by Minn.Stat. § 518.57 (1982). Husband's track record shows him repeatedly failing to meet his court-ordered support obligations. Indisputably, the children's best interests will be served by assuring that their needs are timely met through regular child support payments. While it is possible that husband in the future might improve his support payment record, under the facts of this case we can find no error in the trial

court's decision to assure the availability of child support funds by establishing a trust.

■■■ While the court's findings do not assign a value to the corporation as clearly as we would prefer, there is evidence to support the award of that marital asset as the trial court did. The statute requires a just and equitable division, but not an equal one. *Ruzic v. Ruzic*, 281 N.W.2d 502, 505 (Minn.1979). The value of stock in a closely-held corporation generally is dependent on the efforts of the owners. The Gabrielson corporation is family-owned and operated. Husband, as the majority stockholder's son, received his 49% interest in that corporation at a favorable price. The nature of the debt to the Gabrielson Corporation and the relationship of the parties to that debt (father and son) was before the trial court. So was the fact that no payment had been made on the promissory note reflecting that debt since 1982. Such factor gives credence to wife's argument that the debt itself was not an arm's length one.

Any attempt by the court to divide the 49% corporation interest and debt connected therewith between husband and wife would have been at best difficult and, at worst, totally unworkable. An interest in the corporation would have been of little actual value to the wife. Husband, on the other hand, remains an employee of the corporation. Success in his future efforts on behalf of the corporation will redound to the benefit of his father and himself.

We find no abuse of discretion in the trial court's equal division of the parties' sole liquid asset between them and the award to husband alone of all of the parties' interest in the Gabrielson Corporation, together with the debt attendant thereto.

■■■ 2. In determining a child support obligation, the court must consider the financial resources of both parents and the standard of living the child would have enjoyed if the parents remained married. Minn.Stat. § 518.17, subd. 4 (1982). The court's discretion is limited by the guidelines set forth in Minn.Stat. § 518.551, subd. 5 (1982).

The trial court ordered child support of $135 per month per child. Husband claims the court's order is an upward departure from the guidelines without the required express findings of fact. *Johnson v. Johnson*, 352 N.W.2d 819, 821 (Minn.Ct.App. 1984).

The court found husband was earning $300 per week ($1300 month gross), plus in-kind income. However, the trial court made an additional finding that husband had the ability to earn a net income of $17,500 per year ($1458 net per month). The evidence showed husband had earned a gross income, excluding rent and substantial in-kind income, of $19,500 to $25,762 between 1979 and 1982. Under the guidelines, for a net income of $1458 per month, appellant should pay 35% of his net income, or $510 per month. The court's finding that husband could earn a sufficient income to pay $405 in child support, between his cash wages and in-kind income, is supported by the record. Finally, husband's complaints regarding the hardship caused by the level of his support obligation are largely resolved by recognition of the fact that he actually will have all of his income available to him to dispose of in meeting his own expenses. Child support (and maintenance for the remaining months it will be paid) are paid from the trust established under Minn.Stat. § 518.57.

■ 3. Temporary maintenance may be granted when one spouse (1) lacks sufficient property to provide for her reasonable needs, especially during educational periods, and (2) is unable to adequately support herself through employment. Minn.Stat. § 518.552, subd. 1 (1982). The trial court has wide discretion. Each case must be determined on its own facts, and no single factor is determinative. *Erlandson v. Erlandson*, 318 N.W.2d 36, 39 (Minn.1982). Factors to be considered are the financial resources of both parties, time necessary to acquire an education, standard of living during the marriage, duration of the marriage, and the ability of the paying spouse to meet his own needs. Minn.Stat. § 518.552, subd. 2 (1982).

The trial court determined that wife could not support herself during her retraining because of the responsibilities of the three children. She is obtaining her degree in approximately three years, faster than many students. The trial court ordered temporary maintenance only until wife graduates in June 1985. We find no abuse of discretion in the trial court's award of this limited maintenance.

## DECISION

The trial court did not abuse its discretion in dividing the parties' property, setting child support, nor in awarding limited maintenance to wife.

Affirmed.