*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A25-1030

In Re the Marriage of

Joshua Laurance Patterson, petitioner,
Appellant,

vs.

Rebecca Marie Patterson,
Respondent.

**Filed June 15, 2026**
**Affirmed in part, reversed in part, and remanded.**
**Smith, Tracy M., Judge**

Anoka County District Court
File No. 02-FA-22-1927

Kyle T. Wermerskirchen, Wermerskirchen & Blomquist, LLC, Wayzata, Minnesota (for appellant)

Beverly Dodge, Rachel L. Farhi, Barna, Guzy & Steffen, Ltd., Coon Rapids, Minnesota (for respondent)

Considered and decided by Wheelock, Presiding Judge; Connolly, Judge; and Smith, Tracy M., Judge.

## NONPRECEDENTIAL OPINION

**SMITH, TRACY M.**, Judge

In this marital-dissolution dispute, appellant husband Joshua Laurance Patterson challenges the district court's rulings regarding (1) the valuation of, and the division of the parties' marital interest in, a cabin property, (2) the award of spousal-maintenance to

respondent wife Rebecca Marie Patterson and a requirement that husband escrow certain funds to secure the obligation, (3) the division of the parties' other assets and liabilities, (4) the award of conduct-based pre- and post-decree attorney fees to wife, and (5) a firearm prohibition on husband. We conclude that all of husband's arguments fail except for his challenge to the award of conduct-based pre-decree attorney fees. We affirm in part, reverse in part, and remand to the district court to reconsider the award of conduct-based pre-decree attorney fees.

**FACTS**

Husband and wife married in July 2006 and have two children, who were ages 15 and 17 at the time of trial in 2024. The parties began living apart in July 2022. Husband commenced a dissolution action in December 2022. Wife takes care of the children, and wife and the children were protected by harassment restraining orders (HROs) against husband as of 2024. Husband owns a home-renovation company, JP Renovations, and wife works as a bartender. Husband and wife owned several rental properties. In addition, wife inherited a 50% interest in a cabin, and, during the marriage, the couple made $50,000 in payments toward purchasing the other half of the property. More detailed information about the facts is provided within our discussion of the particular issues below.

A temporary order was filed in July 2023, ordering husband to pay child support in the amount of $832 per month, based upon husband's representations that his income was $4,500 per month. The temporary order reserved wife's request for spousal maintenance, medical support, and attorney fees.

2

A trial took place on October 31 and November 1, 2024. Both husband and wife submitted proposed findings. The district court issued its dissolution order on January 16, 2025. The order divided the parties' assets and liabilities, awarded spousal maintenance to wife, addressed custody and parenting time, and directed an equalizer payment from husband to wife. Wife made a motion to correct an error in the district court's conclusions of law that appeared to require that the equalizer payment be paid to wife from the proceeds of the sale of the parties' marital assets rather than from husband's share.

Husband then made a motion for amended findings, challenging many of the district court's findings of fact and conclusions of law. Husband supported his motion with attorney notes but did not provide a transcript of the trial. Wife then filed a responsive motion, in which she requested additional attorney fees, and a hearing was held before the district court. The district court filed an order amending the conclusion of law as requested by wife, amending one finding of fact that the parties agreed was incorrect, and correcting two clerical errors. It denied the rest of husband's motion. The district court thereafter granted a request by wife for conduct-based attorney fees.

Husband appeals.

**DECISION**

Husband argues that the district court (I) erred in its valuation and calculation of marital value regarding the cabin property, (II) erred in its spousal-maintenance analysis and abused its discretion by requiring that funds be held in escrow as a security for the obligation; (III) abused its discretion by ordering an inequitable distribution of assets and liabilities; (IV) abused its discretion by ordering husband to pay conduct-based attorney

3

fees; and (V) violated husband's Second Amendment rights. We address each argument in turn.

## I.    Cabin Property

Around 2013, wife inherited from her father a one-half interest in a cabin property and wife's sister inherited the other half. Husband acknowledges that a portion of the cabin property is nonmarital. *See* Minn. Stat. § 518.003, subd. 3b(a) (2024) (defining nonmarital property to include any real property acquired by one party but not the other by inheritance). But he argues that the district court erred in valuing the property and in calculating the marital portion of that value.

The circumstances regarding husband and wife's acquisition of the second half of the property are not entirely clear. Wife and her sister agreed that the value of the property after their father's death in 2013 was $136,000. They also agreed that, taking into account other inherited assets, wife would pay her sister $53,255 in exchange for the sister's interest in the property. Wife started making monthly $500 payments to her sister in May 2016 from the rental proceeds from a property that husband and wife owned.

At trial, wife's sister recalled signing a quit-claim deed to the cabin property in March 2018. She stated that husband came over to her house at nine or ten in the evening and asked her to sign the deed and that she felt intimidated and pressured to sign it. The sister did not know whether her spouse ever signed it as well. The district court noted that, in 2020, husband and wife appeared for the first time as the owners of the property. It also noted that no one produced the deed and that it was unknown whether it was ever recorded.

4

When the parties separated in July 2022, husband began keeping the rent from the rental property and wife had no funds to pay her sister. At the time of trial, $50,000 had been paid from the parties' marital funds and $3,255.06 remained due and owing.

The cabin burned down in March 2020, and husband and wife received an insurance payout of $91,800. At trial, husband claimed that he put $25,000 of improvements into the cabin before it burned down and that it cost $185,000 to rebuild it. Husband was unable to produce any documentation of these expenditures. The district court found husband's claims of improvements to be "especially troublesome" because he testified to keeping a folder for every property on which he worked but was unable to produce anything for the cabin. The district court found that the insurance proceeds were used to replace the original structure and that the value of the structure remained largely the same as before the fire.

At trial, husband presented an appraisal of the cabin property from his expert, Emily Poulson (the Poulson appraisal), which valued the property at $394,000 as of June 2, 2023. Of that amount, Poulson attributed $150,000 to the land and $40,000 to a pole barn that preexisted wife's inheriting the property. The district court found the Poulson appraisal to be unreliable and stated that the court would "disregard [Poulson's] valuation of the land and the pre-existing pole barn as those were part of Wife's inheritance and have no marital component save and except for the $50,000.00 in payments Wife made to her sister with marital funds."

In 2023, when the parties' pretrial conference was held and the valuation date was set, the assessed value of the property for tax purposes was $141,500.

5

In its decree, the district court concluded that this 2023 taxed-assessed value was the appropriate value to assign the property. It further decided that, of that amount, $50,000 was deemed marital property. The district court awarded the cabin property to wife.

## A.  Valuation

Husband argues that the district court clearly erred by valuing the cabin by using the 2023 tax-assessed value of $141,500 and disregarding "significant marital improvements made to the property."

The property's tax-assessed value varied up and down between 2012 and 2024. For example, it was assessed at $155,500 in 2012, at $118,000 in 2022, and $141,500 in 2023. In 2024, the tax-assessed value jumped to $421,200, without explanation to the district court. Husband argues that the district court clearly erred because the 2023 value used actually reflects the value of the cabin as of January 2, 2022, and that value was outdated. Husband also asserts that tax-assessed values are not considered valid measures of a property's value and, therefore, the district court should not have used the 2023 tax-assessed value to determine the value of the property. But he does rely on the 2024 tax-assessed value, arguing that the district court should have used it, along with the Poulson appraisal, to determine a "reasonable range" for the value of the property. He contends that a reasonable range would have been between the Poulson appraisal of $394,000 and the 2024 tax-assessed value of $421,200.

A district court's valuation of an item of property is a finding of fact, and it will not be set aside unless it is clearly erroneous based on the record as a whole. *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001). An appellate court does not require the district court

6

to be exact in its valuation of assets. "[I]t is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn. 1979) (citing *Hertz v. Hertz*, 229 N.W.2d 42, 44 (Minn. 1975)); *see Passolt v. Passolt*, 804 N.W.2d 18, 25 (Minn. App. 2011), *rev. denied* (Minn. Nov. 15, 2011). Appellate courts must defer to a district court's credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). Clear-error review does not permit an appellate court to engage in fact-finding, reweigh the evidence, make credibility determinations, or reconcile conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021).

The district court noted several issues with the Poulson appraisal, including that the appraiser spent 95% of her time appraising for purposes other than dissolution, did not walk the property, and did not account for the swampy nature of most of the property's 75.43 acres. The district court also questioned Poulson's decision to value the land at $2,000 per acre, while acknowledging that the land was most certainly valued more towards $3,000 per acre. The district court also took issue with the Poulson appraisal of the pole barn on the property. Although the pole barn cost $61,488 to build, the Poulson appraisal valued it at $40,000, citing "depreciation," even though, the district court said, "there was nothing wrong with it." The district court did not find the Poulson appraisal to be credible, and our deferential standard of review requires us to defer to the fact-finder's credibility determinations. *See Vangsness*, 607 N.W.2d at 472.

Husband also argues that the district court ignored significant improvements to the property that he claimed to have made using marital funds, which increased its value. But

7

the district court did consider husband's testimony regarding marital improvements to the property. It found his testimony not credible since husband failed to provide documentation of the improvements despite acknowledging that he kept documentation for every property on which he worked, and it found that the insurance proceeds were used to replace the original, destroyed cabin with a cabin of largely equal value.

We see no clear error in the district court's determinations. There was conflicting evidence provided to the district court, a questionable appraisal by husband's appraiser, a lack of documentation of husband's alleged improvements to the cabin, and no clear explanation provided to the district court for any particular value. Reviewing the record as a whole, the district court's decision to use the 2023 tax-assessed value of the property was not clearly erroneous. The district court acted within its discretion by declining to use the valuation proposed by husband when he failed to provide evidentiary support or adequately explain his assertions.

### B. Calculation of Marital Portion

Husband next argues that the district court erred in calculating what portion of the cabin was marital property.

First, husband argues that the district court ignored marital improvements to the property. He contends that, based on the improvements, the majority of the value of the property became marital. But the argument that the district court impermissibly ignored marital improvements fails for the same reasons cited above. The district court made credibility and fact determinations with support in the record. If there were no

8

improvements proved to have been made to the property, there were no improvements for the district court to consider in its calculations.

Second, husband argues that the district court ignored that half of the property was acquired during the marriage. But the district court recognized that payments were made to wife's sister from marital funds. This was the reason that the district court determined that the marital interest in the property was $50,000.

Third, husband argues that, even if the district court's valuation was correct, it miscalculated the marital interest in the property. He asserts that with a valuation of $141,500, the marital portion should have been half and not $50,000. Improvements to nonmarital property made by the parties during the marriage are presumed to be marital property. *Dorweiler v. Dorweiler*, 413 N.W.2d 572, 576 (Minn. App. 1987) (citing *Faus v. Faus*, 319 N.W.2d 408, 412 (Minn. 1982)). But appreciation in the value of nonmarital property is marital only if it is the result of active management of the property during the marriage. *Baker v. Baker*, 753 N.W.2d 644, 650 (Minn. 2008). Passive appreciation of nonmarital property is nonmarital property. *Id.* When wife began making payments to her sister, the property was valued at $136,000. At the time of dissolution, the judgment valued the property at $141,500. The district court did not err in its conclusion that only $50,000 was marital property, because the increase in value was not attributed to "active management" of the property and is likely attributable to market appreciation.

## II.     Spousal Maintenance

Husband argues the district court's analysis in awarding wife spousal maintenance was inadequate by failing to consider the "required" factors and failing to adequately

analyze either party's income. He also argues that the district court abused its discretion by requiring that $96,000 from husband's share of the proceeds from the sale of the parties' rental property be placed in escrow to secure husband's maintenance obligation.

**A.    Maintenance Award**

Relevant here, the district court may award spousal maintenance if it finds that the spouse seeking maintenance

> (a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education;
> (b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances; or
> (c) is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn. Stat. § 518.552, subd. 1 (2024); *see Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989) (stating that an award of spousal maintenance requires a showing of need).

A spousal-maintenance order must be made based on "all relevant factors," including the following:

> (a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

10

(c) the standard of living established during the marriage and the extent to which the standard of living was funded by debt;

(d) the duration of the marriage and the earnings, seniority, benefits, and other employment opportunities forgone by the spouse seeking maintenance to support the other spouse or children and the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the age, and physical, mental, or chemical health of both spouses;

(f) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance;

(g) the contribution of a spouse in furtherance of the other party's employment or business; and

(h) the need and ability of each spouse to prepare for retirement and the anticipated time of retirement.

Minn. Stat. § 518.552, subd. 2 (2024); *see also Kampf v. Kampf*, 732 N.W.2d 630, 635 (Minn. App. 2007) ("Factors justifying security for a spousal-maintenance award include the obligee's age, education, vocational experience, and employment prospects."), *rev. denied* (Minn. Aug. 21, 2007).

"When applying these factors, a court must balance the financial needs of [obligee] and her ability to meet those needs against the financial condition of [obligor]." *Fink v. Fink*, 366 N.W.2d 340, 342 (Minn. App. 1985). The statute requires the district court to consider these factors, but the court "is not required to make specific findings on every statutory factor if the findings that were made reflect that the district court adequately considered the relevant statutory factors." *Peterka v. Peterka*, 675 N.W.2d 353, 360 (Minn. App. 2004). Because of "the fact-dependent nature of the inquiry," the supreme court has held that "a [district] court has broad discretion in deciding whether to award maintenance

11

and before an appellate court determines that there has been a clear abuse of that discretion, it must determine that there [is] a clearly erroneous conclusion that is against logic and the facts on record." *Curtis v. Curtis*, 887 N.W.2d 249, 252 (Minn. 2016) (quotation omitted).

Husband claims that the district court ignored several factors, ignored the income that wife could earn on the marital property awarded to her, and did not address wife's ability to meet her reasonable needs. While the district court is not required to make specific findings on every factor, it did make extensive findings. It addressed the expenses and income of both husband and wife. Furthermore, it specifically addressed that wife is unable to meet her needs without support and that her reasonable expenses nearly double the amount that she earns. It also addressed that husband was not reliable in reporting his income because he claimed a monthly income of $4,500 but had approximately $6,932.54 in expenses.

Husband argues that he submitted evidence of his business income, but the district court determined that it could not rely on husband's testimony or his tax returns. It found the parties' standard of living and acquisition of rental properties to be inconsistent with the amount of money he claimed to make. It thus considered his income to be at least matching his expenses of $6,932.54. Moreover, the district court did consider potential income from the homestead and cabin property awarded to wife and found that the properties will not generate income to her but are instead liabilities. The district court also stated that her share of rental-property proceeds will be used to pay her debts and attorney fees, leaving her with "little liquid resources on which to rely in the future." Husband's allegation that the district court ignored relevant factors is not supported by the record.

12

## B.     Spousal-Maintenance Security

Husband argues that the district court abused its discretion by ordering that his share of rental-property proceeds be placed in escrow to pay his maintenance obligation because the requirement is unnecessary and harsh. The district court stated:

> Because the Court is concerned about Wife's ability to collect this award it will order $96,000.00 from Husband's share of the rental property sale proceeds escrowed to make these payments. As an incentive to insure Wife receives at least most of this award the Court will offer Husband the option of paying Wife a lump sum of $63,360.00 in full satisfaction of his maintenance obligation.

Minnesota statutory law provides:

> In all cases when maintenance or support payments are ordered, the court may require sufficient security to be given for the payment of them according to the terms of the order. Upon neglect or refusal to give security, or upon failure to pay the maintenance or support, the court may sequester the obligor's personal estate and the rents and profits of real estate of the obligor, and appoint a receiver of them. The court may cause the personal estate and the rents and profits of the real estate to be applied according to the terms of the order.

Minn. Stat. § 518A.71 (2024).

In making family-law decisions, courts are "guided by equitable principles in determining the parties' rights and liabilities." *Hunley v. Hunley*, 757 N.W.2d 898, 901 (Minn. App. 2008) (quotation omitted). "Thus, the district courts can grant equitable relief as the facts in each particular case and the ends of justice may require." *Id.* Such relief may include requiring security for a party's spousal-maintenance obligation. *See id.* at 900 (upholding requirement of obligor to hold life-insurance policy as security for child-support payments); *Gabrielson v. Gabrielson*, 363 N.W.2d 814, 817-18 (Minn. App. 1985)

(affirming district court's decision to ensure the availability of child-support funds by establishing a trust and requiring obligor to deposit a portion of land-sale proceeds); *Resch v. Resch*, 381 N.W.2d 460, 463 (Minn. App. 1986) (similar). We review a district court's decision about securing spousal maintenance for an abuse of discretion. *Katter v. Katter*, 457 N.W.2d 750, 754 (Minn. App. 1990).

The district court here had statutory and equitable power to require husband to place sale proceeds into escrow to secure his spousal-maintenance obligation. The district court found, "Husband has been secretive about his income and resources. He has retained all of the rents generated during the separation and has not accounted for his use of those funds." Given the district court's concern that husband underestimated his income and husband's failure to account for use of marital rent income, it was within the district court's discretion to order husband to place money in escrow to ensure that the spousal-maintenance award would be paid.

### III. Distribution of Assets and Liabilities

In a dissolution proceeding, a district court "shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property." Minn. Stat. § 518.58, subd. 1 (2024). "A [district] court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion." *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). An appellate court "will affirm . . . [a district court's] division of property if it had an acceptable basis in fact and principle even though we might

14

have taken a different approach." *Id.* A district court "need not make an equal division of the property." *Brockman v. Brockman*, 373 N.W.2d 664, 665 (Minn. App. 1985).

Husband asserts the district court erred in several different ways in its distribution of assets and liabilities.

First, husband argues that the district court erred by signing wife's proposed order without a "single change to the text." While verbatim adoption of a party's proposed findings and conclusions of law is discouraged, it is not itself reversible error. *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn. App. 1992), *rev. denied* (Minn. Feb. 12, 1993).

Second, husband argues that it was error for the district court to make a finding of a reduction in principal against the real estate awarded to husband without doing the same for a property awarded to wife. Husband asserts that this was inequitable.

Husband was awarded a rental property to have as his primary residence. As of May 2023, the property was encumbered by a mortgage in the amount of $229,054. The district court found that payments made on the mortgage between that time and the date of the district court's judgment had reduced the estimated principal owing by $11,034. Accordingly, the district court increased the equity attributed to husband by that same amount. Wife, on the other hand, was awarded the marital homestead. This property was encumbered by a mortgage of $238,965.03 as of May 2023 and a second mortgage in the amount of $20,236.97 as of July 31, 2023. The district court did not include an estimate as to the reduction in principal owed on the property since the May and July 2023 dates. Husband argues that the district court should have found a reduction of $9,648 in the principal owed on that property.

15

Husband does not meaningfully make any additional argument outside of his assertion that it was inequitable for the district court not to similarly account for principal reduction in wife's award of the homestead. "An assignment of error based on mere assertion" is forfeited. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted). Furthermore, a district court's equitable powers do not require that it make an exactly equal division of property. *Brockman*, 373 N.W.2d at 665.

Third, husband argues that the district court erred by "ignor[ing]" husband's "marital debt" exceeding $83,000, while recognizing the allocation to wife of marital debt of $15,762. We are not persuaded that the district court abused its discretion.

At trial, husband claimed that he owed $3,000 to his mother from a loan he received to purchase a property, but neither husband nor his mother could remember what property the loan was for and no documentation regarding repayment of the loan was provided to the district court. Additionally, at trial, husband claimed to owe $38,378.35 on another loan. However, the district court found that the evidence reflected that the debt was discharged and is no longer owed—a finding that is supported by evidence that the loan statement said, "charged off," and that, as of September 2024, the next payment due date was listed as February 16, 2023. It appears that husband is including both of these alleged obligations in the $83,000 sum, but the district court found that neither obligation existed—a determination that is supported by the record.

Another part of the debt that husband claims was marital property ignored by the district court was based on charges on three different credit accounts, all listing JP Renovations as the account holder. The balances owed were as of June 27, July 1, and

16

August 13, 2023. The district court observed that, by the time of trial, "the parties had already been separated for a full year," that "no documentation of the balances owed at the time of separation" was submitted, and that the district court therefore "cannot be certain that these debts were generated for purposes benefiting the marital estate or were for Husband's personal expenditures." The district court's finding is supported by the record. The district court also found that husband stopped paying wife's expenses in March 2023, which further supports that these charges did not benefit the marital estate. Husband is asking us to reweigh the evidence, which we cannot do. *See Kenney*, 963 N.W.2d at 221-22.

Husband asserts that the district court's rulings were inconsistent with the its "categorizing of Husband's business van as a marital asset." Husband's exhibit at trial listed the van as having a marital value of $8,494 and no nonmarital value, and the exhibit proposed that the marital value be allocated entirely to husband. Husband received what he asked for regarding the van, and the district court's characterization of the van as marital does not render its determinations regarding the debt an abuse of discretion.

## IV. Conduct-Based Attorney Fees

Husband challenges the district court's award of conduct-based attorney fees to wife.

"[C]onduct-based attorney fees are to be based on the party's behavior occurring during the litigation process." *Baertsch v. Baertsch*, 886 N.W.2d 235, 238 (Minn. App. 2016). The party moving for conduct-based attorney fees has the burden of showing that the other party's conduct "unreasonably contributed to the length or expense of the

proceeding." *Geske v. Marcolina*, 624 N.W.2d 813, 818 (Minn. App. 2001) (quotation omitted), *rev. denied* (Minn. Aug. 20, 2002).

If a party takes positions that are "duplicitous and disingenuous and have had the effect of further delaying distribution, lengthening [the] litigation, and increasing the expense of [the] proceedings," an award of conduct-based attorney fees is appropriate. *Redmond v. Redmond*, 594 N.W.2d 272, 276 (Minn. App. 1999). "While bad faith could unnecessarily increase the length or expense of a proceeding, it is *not* required for an award of conduct-based attorney fees under Minn. Stat. § 518.14, subd. 1." *Geske*, 624 N.W.2d at 818-19. "A conduct-based attorney-fee award is reviewed for an abuse of discretion." *Sanvik v. Sanvik*, 850 N.W.2d 732, 737 (Minn. App. 2014); *see also* Minn. Stat. §§ 518.14, subd. 1a (stating that conduct-based fees "may" be awarded against a party who unreasonably contributes to the length or expense of the proceeding), 645.44, subd. 15 (stating that "may" is permissive) (2024). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Bender v. Bernhard*, 971 N.W.2d 257, 262 (Minn. 2022) (quotation omitted). "The district court's findings of fact will not be set aside unless clearly erroneous, and we defer to the district court's opportunity to assess the credibility of witnesses." *Wilson v. Wilson*, 11 N.W.3d 331, 339 (Minn. App. 2024), *rev. denied* (Dec. 17, 2024).

Husband was ordered to pay a portion of wife's attorney fees both for husband's conduct leading up to and at trial and for husband's post-decree motion for amended findings. Husband argues that the findings on which the district court relied in awarding

18

conduct-based attorney fees are not supported by the evidence. We address the post-decree fees first, followed by the fees awarded for conduct occurring prior to the decree.

### A. Post-Decree Fees

Following the filing of the order for the dissolution judgment, wife's attorney filed a motion for amended findings to correct an error in the district court's decree that stated that husband's equalizer payment must be paid from the proceeds of the sale of the parties' rental properties rather than from husband's share of the proceeds. Wife's attorney also filed an affidavit stating that she had contacted husband's attorney several times requesting that the attorney and husband sign a stipulation to amend the order but she had not received a response. A hearing on the motion was set. Husband then filed his own motion for amended findings, challenging a substantial portion of the district court's order. Wife then filed a responsive motion and requested additional attorney fees. Husband provided no transcript of the trial, and his motion was supported only by attorney notes. The district court denied his motion.

The district court ordered husband to pay $7,185 for the attorney fees that wife incurred responding to husband's motion for amended findings. The district court stated that husband's motion "appears to be a motion to reconsider under the veil of a motion for amended findings." It also noted that it was inappropriate to amend the order based upon the notes of an attorney because they "are not evidence or part of the record." Furthermore, the district court determined that husband's challenges "cite primarily to testimony, credibility determinations, and weight of evidence determinations" by the district court. Review of the record confirms that husband's motion largely made the same arguments

that he originally made at trial. Although husband points out that, within his motion, he properly requested correction of a clerical error, this was a small part of the motion.

Husband's motion contributed to the length and expense of the proceedings by requiring wife to respond to the motion and the district court to address it. We therefore conclude that the district court did not abuse its discretion for this award of attorney fees.

## B.     Pre-Decree Fees

Wife incurred over $40,000 in attorney fees through trial, and the district court ordered that husband pay wife $25,000 from his share of rental-property proceeds as "partial reimbursement" of the fees she incurred.[1] In addressing attorney fees, the district court stated, "Husband took multiple actions during the proceedings, specifically the following," and made five findings of fact. Husband raises challenges with respect to each finding.

First, the district court found that husband "[i]nsist[ed] on evidentiary hearings for each HRO and appeal[ed] one of them, which he later dismissed." Husband argues that the HRO proceedings are not properly before the district court in the dissolution case, that husband's request for evidentiary hearings in the HRO matters was not disingenuous because he had legitimate defenses to the HRO petitions, and that husband's later dismissal of his one appeal of an HRO shows cooperation. We need not address these arguments because we conclude that the district court erred for another reason. The district court did

---

[1] Husband also argues that he was ordered to "double-pay" wife's attorney fees because he asserts $5,000 of marital debt was for attorney fees. Wife provided evidence of over $40,000 in attorney fees and husband was ordered to pay $25,000, therefore, husband was not ordered to "double-pay."

20

not explain how or why the separate HRO proceedings lengthened or increased the cost of the dissolution proceeding. The district court's finding that husband insisted on evidentiary hearings in the HRO matters thus does not support the award of attorney fees. *See Redmond*, 594 N.W.2d at 276.

Second, the district court found that husband "requested a custody evaluation knowing that the outcome would not be favorable to him but which delayed trial for many months." Husband argues that the record does not support that husband "believed the evaluation would be unfavorable to him" and that it was the district court that determined that the custody evaluation was necessary. Wife does not point us to any record information that reflects that husband knew the outcome would be unfavorable to him. Moreover, while husband did originally request the custody evaluation and a custody evaluation may have delayed trial, it was the district court that required the evaluation. The district court stated in two different pretrial orders that it needed the additional information that a custody evaluation would provide to assess the best interests of the children. The district court's finding that the associated delay should be attributed to husband therefore lacks record support and is clearly erroneous.

Third, the district court found that "[s]ome of Husband's testimony was not credible, which suggests that he either misrepresented or omitted material facts during the proceedings and during his trial testimony." The district court did make several credibility determinations regarding husband's testimony. However, the district court did not explain how husband's lack of credibility during testimony unreasonably increased the length or

21

expense of the proceedings. Absent such an explanation, this finding does not support the award of attorney fees.

Fourth, the district court found that "[i]n discovery . . . Husband failed to provide evidence of his non-marital claim to the marital homestead (receipts) which later resulted in excess trial time to cross-examine him, and his expert, on that claim." At trial, husband introduced an exhibit consisting of a summary of expenses for improvements that he asserts he made to the marital homestead and an exhibit with around 80 pages reflecting photocopies of receipts. The record reflects that wife objected to the introduction of both exhibits and claimed that they were not produced in discovery. However, the district court overruled wife's objection.

Husband argues that wife never brought a motion for a discovery deficiency. Alternatively, husband states that earlier provision of the receipts would not have made any difference to the time or expense of litigation because wife agreed at trial that husband made significant improvements to the marital homestead. Noncompliance with discovery may be an appropriate basis for an award of conduct-based fees, but it must be tethered to an increase in the opposing party's costs. *See Geske*, 624 N.W.2d at 819.

Husband is correct that no motion to compel discovery was ever brought, and we find it significant that the district court overruled wife's objection and admitted the exhibits into evidence. We also note that wife's cross-examination of husband's expert was around five pages, and it does not appear that wife cross-examined husband regarding these exhibits. Thus, the finding that husband's exhibits resulted in excess trial time for cross-examination is not supported by the record and is clearly erroneous.

22

Fifth, the district court noted "Husband's overall litigation conduct – taking unreasonable positions, litigating all HRO's, failing to produce discoverable evidence, making claims for which exhibits and witnesses were prepared and then withdrawn during trial," and that, at the beginning of this proceeding husband told wife, "When [husband's lawyer] is done we will be flat a-s broke. If not[,] I'll pick another fight just to cost more money." Husband argues that it is unclear what the district court is referring to, that "rudeness is not a basis on which to order conduct-based attorney fees," and that, while husband did make a threat to increase costs, the case was "relatively mild in its cost," with "no depositions or protected discovery requests," and thus the finding is unsupported by the record.

Husband's argument has some merit. The district court did make other findings regarding husband taking an unreasonable position—for example, that his expenses were nearly double his reported income. However, even if these positions were found not credible, husband's conduct is not tied to any increase in length or expense of the pretrial proceedings or the two-day trial. It is not clear what exhibits and witnesses were withdrawn, and wife does not direct us to the record in support of this finding. We do not disturb the district court's credibility determinations; indeed, we have determined that the district court's credibility determinations support the district court's substantive rulings in its decree. But the credibility determinations alone do not support an award of conduct-based fees absent findings on how husband's conduct unnecessarily increased the length or expense of the proceeding. *See Geske*, 624 N.W.2d at 818-19.

23

The district court awarded wife $25,000 of her $40,000 in pre-decree attorney fees based on five findings. As we have explained, the second and fourth findings lack record support and are therefore clearly erroneous. As for the remaining three findings, while they are not clearly erroneous, the district court did not explain how husband's conduct increased the length or cost of the proceedings. We therefore reverse the award of attorney fees but remand to the district court for reconsideration of the award in light of our ruling.

## V.      Husband's Second Amendment Rights

Under the district court's conclusions of law for "Custody and Parenting Time," the district court included several actions that husband and wife should take and, within this section, ordered that "Husband may not own or possess firearms." Husband's sole argument on appeal is that the district court imposed an "indefinite prohibition on Husband possessing firearms," in violation of his Second Amendment rights.

The Minnesota Supreme Court has stated that Second Amendment protection extends to "the rights of law-abiding, responsible citizens to possess a handgun in the home for purpose of self-defense, and is fully applicable to the State of Minnesota." *State v. Craig*, 826 N.W.2d 789, 792 (Minn. 2013). "But the right secured by the Second Amendment is 'not unlimited,'" and "the right to possess a firearm does not extend to 'any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). "The deprivation of fundamental rights is subject to strict scrutiny and may only be upheld if justified by a compelling state interest." *LaChapelle v. Mitten*, 607 N.W.2d 151, 163 (Minn. App. 2000), *rev. denied*

24

(Minn. May 16, 2000). The protection of a child's best interests is a compelling state interest. *Id.* at 163-64.

We do not read the district court's order to be an indefinite prohibition on husband's possession of firearms. Instead, because the prohibition relates to the custody and parenting time of the children, we read the order to impose the prohibition until the children are emancipated. At this time, one of the children is no longer a minor, and the other will soon turn 18.

We also read the district court's order to be consistent with the custody-evaluation recommendations. The custody evaluation stated that husband "should not have access to firearms until he is able to better moderate his emotions, because he seems to currently be a threat to himself and his family due to his erratic and threatening thought patterns, as evidenced by his having left a bullet on [wife's] pillow and by his threating [sic] texts to the children and others." The record further reflects husband's erratic behavior towards the children, including texting one of the children, "I had a man held at gum [sic] point until the cops came. Check the news," and "[I] should have shot that f-ck in the head."

Because the district court did not order an indefinite ban on husband's ability to own or possess firearms, his abbreviated Second Amendment argument fails.

In conclusion, we affirm the district court's rulings regarding the cabin property, the spousal-maintenance award, the distribution of assets and liabilities, the award of post-decree attorney fees, and the limited-duration firearm restriction. We reverse the district court's award of $25,000 in pre-decree attorney fees to wife and remand to the district court

to reconsider the award consistent with this opinion. Whether to reopen the record on remand regarding the attorney fees shall be discretionary with the district court.

**Affirmed in part, reversed in part, and remanded.**